IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ERIC L. ESPINOZA,

        Plaintiff,

vs.                                        No. CIV 09-0343 RB/WDS

BOARD OF COUNTY COMMISSIONERS
OF RIO ARRIBA COUNTY, NEW MEXICO,
Rio Arriba County Detention Center, a New Mexico
Governmental Entity; BIDAL A. CANDELARIA,
Individually and in his Official Capacity as Director,
Rio Arriba County Detention Center; DENNIS R.
HERRERA, Individually and in his Official Capacity
as Assistant Administrator for Security, Rio Arriba
County Detention Center; and EIGHT UNIDENTIFIED
CORRECTIONS OFFICERS OF THE RIO ARRIBA
COUNTY DETENTION CENTER, Individually and in
their Official Capacities,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss Claims Made Under

the New Mexico Tort Claims Act, (Doc. 53), filed on July 2, 2010. Jurisdiction arises under 28

U.S.C. §§ 1331 and 1367. Having considered the submissions and arguments of counsel, and being

otherwise fully advised, the Court grants this motion.

I.      **Background.**

On April 7, 2009, Plaintiff filed his Complaint for Civil Rights Violations (Excessive Use

of Force Against a Jail Inmate). (Doc. 1; Compl.) Therein, Plaintiff states that he "brings this action

for violation of his civil rights under the Fourth and Fourteenth Amendments to the United States

Constitution and 42 U.S.C. § 1983, and under the New Mexico Tort Claims Act (Excessive Use of Force)[.]"  (Compl. at 1-2.)

Plaintiff alleges that, on April 25, 2007, he was an inmate serving a sentence, pursuant to a Plea and Disposition Agreement for a nonviolent offense, at the Rio Arriba County Detention Center.  (Compl. ¶ 16.)  Two other inmates, who were housed in the same pod as Plaintiff, argued with a trustee who was handing out breakfast trays.  (Compl. ¶ 17.)  Plaintiff was not involved in the argument.  (*Id.*)  When two corrections officers attempted to move the two argumentative inmates to lock down, the two inmates refused to cooperate.  (Compl. ¶¶ 18-19.)  The two officers directed all inmates in the pod to proceed to the yard area if they were not involved in the confrontation.  (Compl. ¶ 19.)  Plaintiff stayed in the pod.  (Compl. ¶ 21.)

The two officers exited the pod and returned with approximately eight additional officers in full riot gear.[1]  (Compl. ¶¶ 20- 21.)  Upon entering the pod, the Unidentified Defendants brandished rifles loaded with chemical mace balls at all of the inmates, including Plaintiff.  (*Id.*)  The Unidentified Defendants opened fire without any type of warning. (Compl. ¶ 21.)

Plaintiff was struck several times with mace balls.  (Compl. ¶ 22.)  The Unidentified Defendants ordered the inmates to get down onto the floor.  (*Id.*)  Plaintiff complied and placed his hands behind his back.  (*Id.*)  One of the Unidentified Defendants grabbed Plaintiff's left arm and twisted it and handcuffed Plaintiff very tightly.  (Compl. ¶¶ 24-25.)

Plaintiff was removed to the yard area in handcuffs.  (Compl. ¶¶ 26-27.)  Plaintiff remained

---

[1]  These eight officers are designated in the caption of the Complaint as Eight Unidentified Corrections Officers of the Rio Arriba County Detention Center and they are hereinafter referred to as the Unidentified Defendants.

handcuffed in extreme pain for up to an hour and twenty minutes.  (*Id.*)  During this period, Plaintiff was not permitted to wash off the mace that had saturated his skin and clothing.  (*Id.*)  After the handcuffs were removed, Plaintiff was allowed to wash off the mace.  (*Id.*)  Plaintiff's wrists were seriously injured by the excessively tight handcuffs.  (Compl. ¶ 28.)  Bruises completely encircled Plaintiff's wrists and his wrists had swollen to the same size as his clenched fist.  (*Id.*)

Plaintiff requested medical care for his injuries, both verbally and in writing.  (Compl. ¶ 29.) Plaintiff's family members, who were not incarcerated, also requested medical care for Plaintiff. (*Id.*)  Plaintiff's repeated requests for medical attention were ignored for approximately two weeks after the incident.  (Compl. ¶ 30.)

Approximately two weeks after the incident, Plaintiff was transported to Las Clinicas del Norte, a medical facility in or near Española.  (Compl. ¶ 30.)  At the clinic, medical personnel advised Plaintiff that there was a degree of likelihood that he had suffered nerve and/or tendon damage from the excessively tight handcuffing.  (Compl. ¶ 31.) Medical personnel at the clinic prescribed medication for Plaintiff.  (Compl. ¶ 32.)  Defendants withheld the medication for approximately one week following his visit to the clinic.  (*Id.*)  Defendants failed to transport Plaintiff to his follow-up appointment at the clinic.  (Compl. ¶ 33.)

Upon his release from custody, Dr. McKinley examined Plaintiff's wrists at Española General Hospital.  (Compl. ¶ 34.)  Dr. McKinley advised Plaintiff that surgery would be necessary to attempt to correct Plaintiff's injury, and even with surgery, continued swelling was likely and permanent damage to the wrists was possible.  (*Id.*)

Plaintiff alleges three counts: (1) municipal and supervisory liability against Rio Arriba

County (County), Bidal A. Candelaria, and Dennis R. Herrera; (2) claims for excessive force under §1983 and the New Mexico Tort Claims Act (NMTCA) against a "Defendant Elder," who is neither named in the caption nor identified in the Complaint; and (3) punitive damages against Defendant Elder "Solely . . . In Her Individual Capacity" and the Unidentified Defendants.  (Compl. at 8-13.)

In the Motion to Dismiss, Defendants assert that Plaintiff failed to give notice of his tort claim as required by the NMTCA.[2]  In support of this Motion, Defendants submit the Affidavit of Elipio Mercure, who was the Rio Arriba County Risk Manager from April 1, 2007 to September 1, 2007.  (Defs. Ex. A; Doc. 53-1.)  In his Affidavit, Mr. Mercure stated that no notice of intent to pursue litigation was received concerning Plaintiff.  (*Id.*)

In his response, Plaintiff asserts that he and his family gave actual notice of his NMTCA claims by requesting medical care.[3]  In support of this assertion, Plaintiff submitted the Inmate Disciplinary Report, Hearing Form, a video of the incident, and Plaintiff's deposition testimony concerning his requests for medical care.  (Pl. Exs. 1-4; Docs. 57-1-57-4.) Additionally, Plaintiff refers to an allegation in the Complaint that his family requested medical care on his behalf. Plaintiff points out that the NMTCA does not require notice for the claims against the individual defendants.

In their reply, Defendants state that the Motion to Dismiss seeks dismissal of any claims under the NMTCA against the County, any notice was inadequate within the meaning of the

---

[2]  Defendants filed Motion to Dismiss Claims Made Under the New Mexico Tort Claims Act on July 2, 2010, which was after the expiration of the dispositive motion deadline.  In that Plaintiff did not object to the motion as untimely, the Court finds that Plaintiff waived any such objection.  Furthermore, actual notice is a jurisdictional question with respect to the NMTCA claims.  *See Lopez v. State*, 122 N.M. 611, 616, 930 P.2d 146, 151 (1996).

[3]  Plaintiff refers to a denial of medical care claim alleged in Count I.  However, Count I does not contain such a claim.

4

NMTCA, and the Court should decline to exercise supplemental jurisdiction over the NMTCA claims because they raise novel and complex questions of New Mexico law.

## II.      Standard.

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Motions pursuant to Rule 12(b)(1) generally entail either facial attacks on the complaint or factual attacks on the accuracy of its allegations. *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). For a facial challenge, the district court must accept the allegations of the complaint as true. *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). For a factual challenge, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction is based. *Id.* In such a case, "a court's reference to evidence outside the pleadings does not convert the motion into a Rule 56 motion." *Id.* Defendants assert a factual challenge to the Court's subject matter jurisdiction with respect to the NMTCA claims. Therefore, the Court does not presume the truthfulness of the complaint's factual allegations, and may consider affidavits and other documents to resolve disputed jurisdictional facts. *Holt*, 46 F.3d at 1003.

## III.     Discussion.

## A.       The notice requirements of the NMTCA.

The NMTCA notice provisions state, in pertinent part:

A. Every person who claims damages from the state or any local public body under the Tort Claims Act shall cause to be presented to the . . . county clerk of a county for claims against the county, . . . within ninety days after an occurrence giving rise to a claim for which immunity has been waived under the Tort Claims Act, a written notice stating the time, place and circumstances of the loss or injury.

B. No suit or action for which immunity has been waived under the Tort Claims Act

shall be maintained and no court shall have jurisdiction to consider any suit or action against the state or any local public body unless notice has been given as required by this section, or unless the governmental entity had actual notice of the occurrence. The time for giving notice does not include the time, not exceeding ninety days, during which the injured person is incapacitated from giving the notice by reason of injury.

N.M. Stat. Ann. § 41-4-16(A), (B).

Defendants acknowledge that the NMTCA notice provisions are inapplicable to claims against individual governmental employees. *See Niederstadt v. Town of Carrizozo*, 143 N.M. 786, 790-91, 182 P.3d 769, 773-74 (Ct. App. 2008). Additionally, Plaintiff concedes that he failed to present a written notice of the claims to the County as contemplated by § 41-4-16(A). Thus, the issue presented is whether the County had actual notice of the occurrence within ninety days of the incident within the meaning of § 41-4-16(B). *See Lopez v. State*, 122 N.M. 611, 615, 930 P.2d 146, 150 (1996).

**B.    Plaintiff did not provide actual notice of his NMTCA claims.**

Actual notice under § 41-4-16(B) "contemplates that the [governmental entity] must be given notice of a likelihood that litigation may ensue." *Lopez*, 122 N.M. at 615, 930 P.2d at 150 (quotation omitted). Notably, it "does not require that the notice, whether a police report or other method, indicate a lawsuit will be filed, but rather, that the notice must inform the proper governmental entity that there exists a likelihood that litigation may ensue." *Lopez*, 122 N.M. at 615, 930 P.2d at 150 (quotation omitted). In applying this standard, New Mexico courts look at "whether, from the totality of the circumstances known to the governmental entity charged with fault in the occurrence, a reasonable person would have concluded that the victim may claim compensation." *Lopez*, 122 N.M. at 615, 930 P.2d at 150.

Plaintiff relies on the Inmate Disciplinary Report and Hearing Form concerning the incident, as well as video of the incident recorded by cameras in the detention center.   The Inmate Disciplinary Report and Hearing Form was prepared by detention center personnel to document the incident and impose discipline on the inmates who were involved.  The video recorded some of the events in question. These materials are analogous to police or accident reports.

The New Mexico Supreme Court has held that receipt of a police report could provide actual notice "only where the report contains information which puts the governmental entity allegedly at fault on notice that there is a claim against it," thereby satisfying the statutory purpose " 'to ensure that the agency allegedly at fault is notified that it may be subject to a lawsuit.' " *City of Las Cruces v. Garcia*, 102 N.M. 25, 27, 690 P.2d 1019, 1021 (1984).  The materials submitted by Plaintiff contain nothing that would inform the County that it might be subject to a lawsuit for claims concerning alleged excessive force.  *See Marrujo v. N.M. Highway Transp. Dep't*, 118 N.M. 753, 761, 887 P.2d 747, 755 (1994) (holding that accident reports "offered no suggestion that a tort had occurred or that a lawsuit was impending" and therefore did not constitute actual notice).  Thus, they are wholly inadequate to constitute actual notice.

Plaintiff's deposition testimony concerning his requests for medical care and allegations that his family requested medical care on his behalf are similarly insufficient.  Similarly, requests by Plaintiff and his family for medical care do not equate to a claim for denial of medical care.  Such requests would not have put the County on notice that Plaintiff might claim compensation for denial of medical care, let alone excessive force or municipal/supervisory liability claims.  Nothing submitted by Plaintiff would have given the County notice there was a likelihood that litigation

7

might ensue as to any type of claim.  In that Plaintiff failed to provide actual notice of the lawsuit within the meaning of § 41-4-16(B), his claims made under the NMTCA must be dismissed.

**C.      Supplemental jurisdiction.**

In the alternative, Defendants request that the Court decline to exercise supplemental jurisdiction over the state-law claims, citing to *Hernandez v. City of Albuquerque*, CIV 02 -0333 JB/RHS (D. N.M., Jan. 26, 2004).  In that the notice issue is dispositive of the state-law claims, this request is moot.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion to Dismiss Claims Made Under the New Mexico Tort Claims Act, (Doc. 53), filed on July 2, 2010, is **GRANTED**.

_____

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**