IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


ERIC L. ESPINOZA,

        Plaintiff,

vs.                                      No. CIV 09-0343 RB/WDS


BOARD OF COUNTY COMMISSIONERS
OF RIO ARRIBA COUNTY, NEW MEXICO,
Rio Arriba County Detention Center, a New Mexico
Governmental Entity; BIDAL A. CANDELARIA,
Individually and in his Official Capacity as Director,
Rio Arriba County Detention Center; DENNIS R.
HERRERA, Individually and in his Official Capacity
as Assistant Administrator for Security, Rio Arriba
County Detention Center; and EIGHT UNIDENTIFIED
CORRECTIONS OFFICERS OF THE RIO ARRIBA
COUNTY DETENTION CENTER, Individually and in
their Official Capacities,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment on

Qualified Immunity and Causation, (Doc. 35), filed on June 7, 2010.  Jurisdiction arises under 28

U.S.C. §§ 1331.  Having considered the submissions and arguments of counsel, and being otherwise

fully advised, the Court grants the motion as to the claim against Defendant Bidal A. Candelaria in

his individual capacity and otherwise denies this Motion.

## I.    Background.

On April 7, 2009, Mr. Espinoza filed his Complaint for Civil Rights Violations (Excessive

Use of Force Against a Jail Inmate).  Doc. 1.  Therein, Mr. Espinoza recounts that, on April 25,

2007, he was serving a sentence at the Rio Arriba County Detention Center when two fellow inmates

argued with a trustee and correctional officers.  In the course and aftermath of the ensuing fracas, correctional officers shot Mr. Espinoza with mace balls and tightly handcuffed him.  Mr. Espinoza alleges that he suffered pain, bruising and swelling, and sustained permanent injuries to his left wrist and hand.

Mr. Espinoza brings suit under 42 U.S.C. §1983 and the New Mexico Tort Claims Act (NMTCA).  He advances three bases for recovery: Count I, municipal and supervisory liability against Rio Arriba County (County), Bidal A. Candelaria and Dennis R. Herrera; Count II, use of excessive force against Eight Unidentified Corrections Officers of the Rio Arriba County Detention Center (Unidentified Defendants) and a "Defendant Elder," who is neither named in the caption nor identified[1] in the Complaint; and (3) punitive damages against the Unidentified Defendants and Defendant Elder "Solely . . . In Her Individual Capacity."  Compl. at 8-13.  Plaintiff requests an award of damages, a declaratory judgment, attorney's fees, and costs.

On August 2, 2010, the Court granted Defendants' Motion to Dismiss the NMTCA claims. Doc. 71.  On August 17, 2010, the Court granted Mr. Espinoza's unopposed Motion to Dismiss the claims against the Unidentified Defendants.  Doc. 76.  The sole remaining claims consist of the municipal liability and supervisory liability claims against the County, Mr. Candelaria, and Mr. Herrera.  Doc. 45.

In the Motion for Summary Judgment Based on Qualified Immunity and Causation, which was filed before the claims against the Unidentified Defendants were voluntarily dismissed, Defendants assert the Unidentified Defendants are entitled to qualified immunity and there is no evidence that links the alleged overly-tight handcuffs with the claimed injuries.  Doc. 35.  Mr.

---

[1]  In that the Pretrial Order does not mention a Defendant Elder, it is presumed that the references to her are typographical errors.

Espinoza responds that the Fourth Amendment standard applies to the excessive force claims and Defendants are not entitled to qualified immunity. Doc. 68. In their reply, Defendants point out that the Eighth Amendment standard applies and they are entitled to summary judgment based on qualified immunity and causation. Doc. 73.

**II.      Summary Judgment Standard.**

Summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate "only where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (quoting Fed. R. Civ. P. 56(c)). When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. *Turner v. Pub. Serv. Co. of Colo*., 563 F.3d 1136, 1142 (10th Cir. 2009).

**III.     Statement of Facts.**

On summary judgment, the Court must view the facts in a light most favorable to Mr. Espinoza, the non-moving party. *See Turner*, 563 F.3d at 1142. Thus, reasonable inferences are drawn and factual ambiguities are resolved in his favor.

On April 19, 2007, Mr. Espinoza began serving a sentence for the felony offense of driving while under the influence of intoxicating liquor or drugs at the Rio Arriba County Detention Center. Doc. 35-1, Def. Ex. A, Pl. Dep. 42-43; Doc. 73-1, Def. Ex. C, Repeat D.U.I. Offender Judgment and Sentence and Order of Commitment. Mr. Espinoza was housed in Pod B-1. Pl. Dep. 42.

On April 25, 2007, two inmates in Pod B-1 began arguing with a trustee who was handing

out breakfast trays.  Pl. Dep. 44-45.  Mr. Espinoza was not involved in the argument.  Pl. Dep. 53.

Two correctional officers attempted to remove the argumentative inmates to lock down, but the

unruly inmates refused to cooperate.  Pl. Dep. 52; Undisputed Fact No. 4.  The two correctional

officers exited Pod B, but soon returned and instructed all inmates who were not involved in the

confrontation to exit the pod and go into the recreation area.  Pl. Dep. 52; Undisputed Fact No. 5.

Mr. Espinoza refused to exit the pod because Mr. Espinoza did not believe the situation was going

to escalate and he did not want to get involved.  Pl. Dep. 52-53.

The two correctional officers left Pod B and returned with other correctional officers,

including Mr. Herrera. Undisputed Fact No. 6; Pl. Dep. 55.  The correctional officers were dressed

in full riot gear with shields and mace-ball rifles.  *Id.*  Mr. Espinoza was standing next to his

assigned bed with his back to the correctional officers, as the correctional officers ran into Pod B-1.

Pl. Dep. 56.  The correctional officers screamed for everyone to get down and Mr. Espinoza

complied.  *Id*.

As they entered Pod B-1, the correctional officers shot Mr. Espinoza with one or more mace

balls.  Pl. Dep. 56.  After Mr. Espinoza complied with the order to get down, the correctional

officers continued to shoot Mr. Espinoza as he lay on the floor.  Pl. Dep. 57.  The correctional

officers shot Mr. Espinoza with a total of three mace balls.  Pl. Dep. 62.  As a result of being shot

with the mace balls, Mr. Espinoza had welts on his back for three or four days.  Pl. Dep. 61.

Mr. Espinoza was ordered to place his hands behind his back and Mr. Espinoza complied.

Pl. Depo. 63.  One of the correctional officers grabbed Mr. Espinoza's left arm and twisted Mr.

Espinoza's wrist until it was "almost completely turned around."  Pl. Dep. 63-64.  While his wrist

was twisted, the correctional officer put handcuffs on Mr. Espinoza so tightly that two correctional

officers were needed to remove the handcuffs.  Pl. Dep. 64, 68.

After he was handcuffed, Mr. Espinoza was taken to the yard area where the handcuffs were removed. Pl. Dep. 69. Upon removal of the handcuffs, Mr. Espinoza noticed rings around his wrists as well as swelling. Pl. Dep. 70. As a result of the handcuffing, Mr. Espinoza's left wrist swelled up two or three inches. *Id.*

The correctional officers placed Mr. Espinoza in lock down in Pod C. Pl. Dep. 70. While in lock down, Mr. Espinoza was able to wash the mace off his body with water from a sink. Pl. Dep. 70.

Mr. Espinoza requested medical attention. Doc. 68-1, Pl. Dep. 74. Mr. Espinoza's two sisters called and asked Mr. Herrera and Mr. Candelaria to take Mr. Espinoza for medical attention. Pl. Dep. 75-77. Approximately two weeks after the incident, Mr. Espinoza was taken to La Clinica de Pueblo in Tierra Amarilla for medical attention. Pl. Dep. 78.

On May 7, 2007, Mr. Espinoza presented to Tami Griffith, Certified Nurse Practitioner, with complaints of weakness in the left wrist and hand. Doc. 35-1, Def. Ex. F. Nurse Griffith diagnosed left wrist pain, and prescribed Motrin and ice for the area as needed. *Id.* Mr. Espinoza was not given his prescribed medication despite his repeated requests. Pl. Dep. 78.

In June 2007, Dr. McKinley informed Mr. Espinoza that Mr. Espinoza had nerve or possible tendon damage to his left hand. Pl. Dep. 66. X-rays, which were taken on June 17, 2007, showed a small metallic foreign body within the proximal phalanx of second digit of the left hand, but no evidence of fracture or dislocation. Doc. 35-1, Def. Ex. D.

At his deposition, held on March 12, 2010, Mr. Espinoza showed counsel a bump on the top of his left hand that Mr. Espinoza attributed to the handcuffing incident. Pl. Dep. 65-66. Mr. Espinoza brought photographs of the bump to his deposition and these photographs are attached to Defendants' motion as Exhibit C. Doc. 35-1, Def. Ex. C. Mr. Espinoza testified in his deposition

that he experiences numbness and pain in his left hand when doing physical work.  Pl. Dep. 82-83.

## IV.      Discussion.

**A.      The assertion of qualified immunity is not moot as to Mr. Candelaria and Mr. Herrera.**

The qualified immunity defense applies to Mr. Espinoza's claims for monetary damages against the individual Defendants in their individual capacities.  *See Elder v. Holloway*, 510 U.S. 510, 512 (1994).  While Defendants' arguments concerning qualified immunity are framed in terms of the conduct of the Unidentified Defendants, who responded to the disturbance on April 25, 2007, they may be read to encompass the supervisory claims against Mr. Candelaria and Mr. Herrera. (Doc. 35 at 6-9.)  In that Mr. Espinoza has voluntarily dismissed his claims against the Unidentified Defendants, the assertion of qualified immunity by the Unidentified Defendants is moot as to the Unidentified Defendants.

It bears underscoring that Mr. Espinoza alleges claims for supervisory liability against Mr. Candelaria and Mr. Herrera in their individual, as well as their official, capacities.  Questions of supervisory liability are properly included in the qualified immunity inquiry.  *See Dodds v. Richardson*, --- F.3d ----, 2010 WL 3064002 * 5 (Aug. 6, 2010).  The determination of "whether a plaintiff has demonstrated a defendant-supervisor violated his constitutional rights and whether § 1983 allows a plaintiff to hold a defendant-supervisor liable for that violation may depend on whether that defendant-supervisor, rather than only his subordinates, violated the plaintiff's constitutional rights."  *Id.*  The assertion of qualified immunity is not moot as to the supervisory claims against Mr. Candelaria and Mr. Herrera in their individual capacities.

**B.      Mr. Candelaria is entitled to qualified immunity; Mr. Herrera is not.**

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights

6

of which a reasonable person would have known.'" *Pearson v. Callahan*, ___ U.S. ___, ____, 129

S.Ct. 808, 815 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant

asserts qualified immunity, the plaintiff bears the burden of satisfying a " 'strict two-part test.' "

*McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010) (*quoting Bowling v. Rector*, 584 F.3d 956, 964

(10th Cir. 2009)). "The plaintiff must establish '(1) that the defendant violated a constitutional or

statutory right, and (2) that this right was clearly established at the time of the defendant's conduct

. . . .'" *Id.* (quoting *Bowling*, 584 F.3d at 964).

Before embarking on the qualified immunity analysis, it is essential to delineate the

applicable constitutional standard. In the Complaint, Mr. Espinoza states that he has sued

Defendants under the Fourth Amendment. However, the Fourth Amendment excessive force

standard applies to pretrial detainees. *See Fisher v. City of Las Cruces,* 584 F.3d 888, 899 n. 7 (10th

Cir. 2009). The record establishes that Mr. Espinoza was a convicted person serving a sentence at

the time of the incident. In that Mr. Espinoza was a convicted prisoner, the Eighth Amendment

standard, and not the Fourth Amendment standard, applies. *See Graham v. Connor*, 490 U.S. 386,

394 (1989). Thus, the Eighth Amendment standard applies to the qualified immunity analysis.

The first prong of the two-part test to resist qualified immunity requires Mr. Espinoza to

establish that Defendants subjected him to excessive force under the Eighth Amendment. In order

to do so, Mr. Espinoza must show that Defendants used excessive force which resulted in

"unnecessary and wanton infliction of pain." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (*quoting*

*Whitley v. Albers*, 475 U.S. 312, 319 (1986)). While prison officials must occasionally resort to

physical force to maintain or restore institutional order, they must also balance the institutional

interest against the risk of harm to the inmate. *See Hudson*, 503 U.S. at 5. The "core judicial

inquiry" for an Eighth Amendment excessive force claim is "whether force was applied in a good

7

faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." *Hudson*, 503 U.S. at 7.

Notably, an Eighth Amendment excessive force claim contains both an objective and subjective component. *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991).  The objective component considers whether the alleged force "was objectively harmful enough to establish a constitutional violation." *Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2002) (citation omitted).  While the extent of injury suffered by the inmate is a factor to consider, "[t]he absence of serious injury . . . does not end [the Eighth Amendment inquiry]." *Hudson*, 503 U.S. at 8.  The subjective component looks to whether the defendants acted "maliciously and sadistically" to cause harm.  *See id.,* 503 U.S. at 9.

Factors relevant to the Eighth Amendment excessive force determination include: (1) the need for the application of force; (2) the relationship between that need and the amount of force used; (3) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officers on the basis of facts known to them; and (4) any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 320-321.

Mr. Espinoza testified in his deposition that he was not involved in the argument between the two other inmates and the trustee.  Plaintiff's deposition testimony indicates that he did not pose an active threat to anyone during the altercation. Despite the lack of menacing behavior exhibited by Mr. Espinoza, the correctional officers shot him three times in the back with mace balls and continued to shoot him while he lay on the floor.  While it is true that the correctional officers were faced with disobedient inmates, the need to apply such extreme force to a non-argumentative, but recalcitrant, inmate such as Plaintiff was questionable.  The inmates were contained in Pod B and at least eight correctional officers were present in full riot gear.  The correctional officers could have

reasonably focused their efforts on the combative inmates rather than Plaintiff.

Based on Mr. Espinoza's version of events, which is the only version present in the record, the correctional officers came in shooting and made no attempt to temper their response so as to avoid harm to Mr. Espinoza.  Moreover, the handcuffs were applied in an excessively tight manner, even though Plaintiff complied with the commands to get down on the floor and place his hands behind his back.  Taken in the light most favorable to Mr. Espinoza, the evidence establishes that the degree of force used on Mr. Espinoza was excessive in light of Mr. Espinoza's non-threatening behavior.  Mr. Espinoza has satisfied the first prong of the "strict two-part test" to resist the assertion of qualified immunity.  *McBeth*, 598 F.3d at 716.

The second part of the test requires Mr. Espinoza to show that the right was clearly established at the time of the defendant's conduct . . . .'" *Id.*  The law is clearly established when "a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains." *Harman v. Pollock*, 586 F.3d 1254, 1261 (10th Cir. 2009) (internal quotations omitted).  On April 25, 2007, the law was clearly established that correctional officers' malicious application of force, which is more than de minimis, violates the Eighth Amendment. *See Hudson*, 503 U.S. at 5; *Whitley*, 475 U.S. at 318.  The correctional officers who were personally involved in the shooting and handcuffing of Mr. Espinoza would not be entitled to qualified immunity.

The determination that the eight unidentified correctional officers would not be entitled to qualified immunity is distinct from the question of whether Mr. Candelaria and Mr. Herrera are entitled to qualified immunity with respect to the supervisory liability claims against them in their individual capacities. *See Dodds*, 2010 WL 3064002 at * 4.  The Tenth Circuit recently endorsed the following explanation of this distinction:

9

In conducting qualified immunity analysis . . ., courts do not merely ask whether, taking the plaintiff's allegations as true, the plaintiff's clearly established rights were violated. Rather, courts must consider as well whether each defendant's alleged conduct violated the plaintiff's clearly established rights. For instance, an allegation that Defendant A violated a plaintiff's clearly established rights does nothing to overcome Defendant B's assertion of qualified immunity, absent some allegation that Defendant B was responsible for Defendant A's conduct.

*Dodds*, 2010 WL 3064002 at * 4-5 (*quoting Hope v. Pelzer*, 536 U.S. 730, 751 n. 9, (2002) (Thomas, J., dissenting)).  This Court must carefully analyze the evidence of record with respect to Mr. Candelaria and Mr. Herrera, the only remaining Defendants sued in their individual capacities.

While the Complaint contains allegations of supervisory liability with respect to Mr. Candelaria,[2] the record is devoid of any evidence that would support the supervisory liability claim against him in his individual capacity.  In that Mr. Espinoza has produced no evidence that Mr. Candelaria was in any way personally responsible for the conduct of the correctional officers during the incident, Mr. Espinoza has not satisfied the first prong of the "strict two-part test" to overcome Mr. Candelaria's assertion of qualified immunity.  *McBeth*, 598 F.3d at 716.  Accordingly, Mr. Candelaria is entitled to summary judgment based on qualified immunity for the supervisory liability claims alleged against him in his individual capacity.

The outcome differs with respect to Mr. Herrera.  Mr. Espinoza testified in his deposition that Mr. Herrera was present during the incident.  Based on Mr. Herrera's position as Assistant Administrator for Security, it may be reasonably inferred that Mr. Herrera played a leadership role

---

[2] Section 1983 does not allow a plaintiff to hold an individual government official liable "under a theory of respondeat superior."  *Gagan v. Norton*, 35 F.3d 1473, 1476 n. 4 (10th Cir. 1994) (*citing Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978)).  Rather, "§ 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or [his] subordinates) of which subjects, or causes to be subjected that plaintiff to the deprivation of any rights . . . secured by the Constitution . . .".  *Dodds*, 2010 WL 3064002 at * 8.

in quelling the disturbance.  Mr. Espinoza has produced facts that, if proven at trial, would establish

Mr. Herrera's personal involvement caused the misconduct complained of and, based on the

indiscriminate shooting and excessively tight handcuffs, he acted with the requisite subjective intent.

*See Dodds*, 2010 WL 3064002 at * 12.  Having construed the evidence and drawn all reasonable

inferences in the light most favorable to Mr. Espinoza, the Court has concluded that Mr. Herrera

may have been responsible for the application of excessive force in violation of the Eighth

Amendment.   Arguably, Mr. Espinoza has shown that Mr. Herrera may have violated a

constitutional right.   For this reason, Mr. Herrera is not entitled to qualified immunity on the

supervisory liability claim against him in his individual capacity.

**C.      Defendants are not entitled to summary judgment on causation.**

Defendants move for summary judgment on the grounds that Mr. Espinoza has produced no

evidence that his injuries were caused by the handcuffs.  As mentioned *supra* in Section IV. B., the

Supreme Court has disavowed a "significant injury" requirement in the Eighth Amendment context

in assessing whether excessive force is cruel and unusual punishment.  *Hudson*, 503 U.S. at 7; *see*

*also Wilkins v. Gaddy*, ___ U.S. ____ ,130 S.Ct. 1175, 1179-80 (2010) (per curiam) ("An inmate

who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim

merely because he has the good fortune to escape without serious injury."). With respect to the

injury requirement, the Tenth Circuit has held:

> [T]he degree of injury may be highly relevant to the determination of the
> unreasonableness of the force used. But we decline to adopt a rule today, which we
> believe would be inconsistent with *Hudson*, that permits an officer to beat an inmate
> so long as the resulting injuries are neither permanent nor require medical attention.

*United States v. LaVallee*, 439 F.3d 670, 688 (10th Cir. 2006).

While relevant to the excessive force inquiry, Mr. Espinoza need not show a significant

injury in order to prevail on his Eighth Amendment excessive force claim.  *Wilkins v. Gaddy*, 130 S.Ct. at 1178.

Mr. Espinoza testified in his deposition that the shooting of mace balls left welts on his back for days after the incident.  Mr. Espinoza also testified in his deposition that a correctional officer grabbed Mr. Espinoza's left arm and twisted Mr. Espinoza's wrist until it was "almost completely turned around."  Pl. Dep. 63-64.  While his wrist was twisted, the correctional officer put handcuffs on Mr. Espinoza so tightly that two correctional officers were needed to remove the handcuffs.  Pl. Dep. 64, 68.  Nurse Griffith's notes confirm that Mr. Espinoza suffered numbness and pain approximately two weeks after the incident.  This evidence, construed in the light most favorable to Mr. Espinoza, establishes that the injuries were sufficiently serious to violate the Eighth Amendment.  Under these circumstances, summary judgment on causation would be inappropriate.

**D.      Issues relating to supervisory and municipal liability should be briefed.**

The only claims that remain are the supervisory and municipal liability claims against the County, Mr. Candelaria in his official capacity, and Mr. Herrera in his official and individual capacities.  In order to prove supervisory liability at trial, Mr. Espinoza would have to establish that Mr. Candelaria and/or Mr. Herrera created, promulgated, implemented, or were in some way responsible for the continued operation of a policy which subjected Plaintiff, or caused Plaintiff to be subjected to the deprivation of his rights.  *See Dodds*, 2010 WL 3064002 at * 8.  In order to prove municipal liability, Mr. Espinoza would need to show the existence of a municipal policy or custom, a direct causal link between the policy or custom and the injury alleged, and the municipal custom or policy was the "moving force" behind the violation.  *See Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 399 (1997); *see also Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993).

While it appears that the evidence of record would not establish the remaining claims at trial,

these matters have not been briefed.  The Court finds that proceeding to trial under these circumstances would be inappropriate and possibly result in the waste of governmental resources. The trial will be vacated and the parties allowed an opportunity to brief potentially dispositive issues.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion for Summary Judgment on Qualified Immunity and Causation, (Doc. 35), filed on June 7, 2010, is **GRANTED AS TO THE CLAIM AGAINST DEFENDANT BIDAL A. CANDELARIA IN HIS INDIVIDUAL CAPACITY AND OTHERWISE DENIED.**

**IT IS FURTHER ORDERED** that the jury trial is **VACATED.**

**IT IS FURTHER ORDERED** that the period for filing dispositive motions is **REOPENED AND EXTENDED TO SEPTEMBER 15, 2010**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**

13