IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ERIC L. ESPINOZA,

       Plaintiff,

vs.                                                      No. CIV 09-0343 RB/WDS

BOARD OF COUNTY COMMISSIONERS
OF RIO ARRIBA COUNTY, NEW MEXICO,
Rio Arriba County Detention Center, a New Mexico
Governmental Entity; BIDAL A. CANDELARIA,
Individually and in his Official Capacity as Director,
Rio Arriba County Detention Center; DENNIS R.
HERRERA, Individually and in his Official Capacity
as Assistant Administrator for Security, Rio Arriba
County Detention Center; and EIGHT UNIDENTIFIED
CORRECTIONS OFFICERS OF THE RIO ARRIBA
COUNTY DETENTION CENTER, Individually and in
their Official Capacities,

       Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment on Qualified Immunity, (Doc. 81), filed on September 8, 2010. Jurisdiction arises under 28 U.S.C. § 1331. Plaintiff did not file a response in opposition to this motion. Having considered the motion and memorandum in support thereof, the record, the relevant law, and being otherwise fully advised, the Court grants this Motion.

**I.**     **Background.**

On April 7, 2009, Mr. Espinoza filed his Complaint for Civil Rights Violations (Excessive Use of Force Against a Jail Inmate). (Doc. 1). Therein, Mr. Espinoza recounts that, on April 25, 2007, he was serving a sentence at the Rio Arriba County Detention Center, when two fellow inmates argued with a trustee and correctional officers. In the course and aftermath of the ensuing

fracas, correctional officers shot Mr. Espinoza with mace balls and tightly handcuffed him. Mr. Espinoza alleges that he suffered pain, bruising, swelling, and permanent injuries to his left wrist and hand.

Mr. Espinoza brought suit under 42 U.S.C. §1983 and the New Mexico Tort Claims Act (NMTCA). He advanced three bases for recovery: Count I, municipal and supervisory liability against Rio Arriba County (County), Bidal A. Candelaria and Dennis R. Herrera; Count II, use of excessive force against Eight Unidentified Corrections Officers of the Rio Arriba County Detention Center (Unidentified Defendants) and a "Defendant Elder," who is neither named in the caption nor identified[1] in the Complaint; and Count III, punitive damages against the Unidentified Defendants and Defendant Elder "Solely . . . In Her Individual Capacity." (Compl. at 8-13). Plaintiff requests an award of damages, a declaratory judgment, attorney's fees, and costs.

On August 2, 2010, the Court granted Defendants' Motion to Dismiss the NMTCA claims. (Doc. 71). On August 17, 2010, the Court granted Mr. Espinoza's unopposed Motion to Dismiss the claims against the Unidentified Defendants. (Doc. 76). On September 2, 2010, the Court determined that the Eighth Amendment standard applied and granted Defendants' Motion for Summary Judgment Based on Qualified Immunity and Causation as to the claims against Defendant Bidal A. Candelaria in his individual capacity and otherwise denied the Motion. (Doc. 80).

The remaining claims consist of municipal liability and supervisory liability claims against the County, Mr. Candelaria in his official capacity, and Mr. Herrera in his official capacity and his individual capacity. (Doc. 45). In the Motion for Summary Judgment *sub judice*, Defendants seek summary judgment on the remaining claims. (Doc. 81).

---

[1] In that the Pretrial Order does not mention a Defendant Elder, it is presumed that the references to her are typographical errors.

**II.     Standard.**

Summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate "only where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (quoting Fed. R. Civ. P. 56(c)). When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1142 (10th Cir. 2009).

**III.    Statement of Facts.**

On summary judgment, the Court must view the facts in a light most favorable to Mr. Espinoza, the non-moving party. *See Turner*, 563 F.3d at 1142. Thus, reasonable inferences are drawn and factual ambiguities are resolved in his favor.

On April 19, 2007, Mr. Espinoza began serving a sentence for the felony offense of driving while under the influence of intoxicating liquor or drugs, at the Rio Arriba County Detention Center. (Doc. 35-1, Def. Ex. A, Pl. Dep. 42-43; Doc. 73-1, Def. Ex. C, Repeat D.U.I. Offender Judgment and Sentence and Order of Commitment). Mr. Espinoza was housed in Pod B. (Pl. Dep. 42).

On April 25, 2007, two inmates in Pod B began arguing with a trustee who was handing out breakfast trays. (Pl. Dep. 44-45). Mr. Espinoza was not involved in the argument. (Pl. Dep. 53). Two correctional officers attempted to remove the argumentative inmates to lock down, but the unruly inmates refused to cooperate. (Pl. Dep. 52; Undisputed Fact No. 4). The two correctional officers exited Pod B, but soon returned and instructed all inmates who were not involved in the

confrontation to exit Pod B and go into the recreation area.  (Pl. Dep. 52; Undisputed Fact No. 5).  Mr. Espinoza refused to exit Pod B because Mr. Espinoza did not believe the situation was going to escalate and he did not want to get involved.  (Pl. Dep. 52-53).

The two correctional officers left Pod B and returned with other correctional officers, including Mr. Herrera. (Undisputed Fact No. 6; Pl. Dep. 55).  The correctional officers were dressed in full riot gear with shields and mace-ball rifles.  *Id.*  Mr. Espinoza was standing next to his assigned bed with his back to the correctional officers, as the correctional officers ran into Pod B.  (Pl. Dep. 56).  The correctional officers screamed for everyone to get down and Mr. Espinoza complied. *Id.*

As they entered Pod B, the correctional officers shot Mr. Espinoza with one or more mace balls.  (Pl. Dep. 56).  After Mr. Espinoza complied with the order to get down, the correctional officers continued to shoot Mr. Espinoza as he lay on the floor.  (Pl. Dep. 57).  The correctional officers shot Mr. Espinoza with a total of three mace balls.  (Pl. Dep. 62).  As a result of being shot with the mace balls, Mr. Espinoza had welts on his back for three or four days.  (Pl. Dep. 61).

Mr. Espinoza was ordered to place his hands behind his back and Mr. Espinoza complied.  (Pl. Dep. 63).  One of the correctional officers grabbed Mr. Espinoza's left arm and twisted Mr. Espinoza's wrist until it was "almost completely turned around."  (Pl. Dep. 63-64).  While his wrist was twisted, the correctional officer put handcuffs on Mr. Espinoza so tightly that two correctional officers were needed to remove the handcuffs.  (Pl. Dep. 64, 68).

After he was handcuffed, Mr. Espinoza was taken to the yard area where the handcuffs were removed.  (Pl. Dep. 69).  Upon removal of the handcuffs, Mr. Espinoza noticed rings around his wrists, as well as swelling.  ( Pl. Dep. 70).  As a result of the handcuffing, Mr. Espinoza's left wrist swelled up two or three inches. *Id.*

The correctional officers placed Mr. Espinoza in lock down in Pod C. (Pl. Dep. 70). While in lock down, Mr. Espinoza was able to wash the mace off his body with water from a sink. (Pl. Dep. 70).

On May 7, 2007, Mr. Espinoza presented to Tami Griffith, Certified Nurse Practitioner, with complaints of weakness in the left wrist and hand. (Doc. 35-1, Def. Ex. F). Nurse Griffith diagnosed left wrist pain, and prescribed Motrin and ice for the area as needed. *Id*.

In June 2007, Dr. Matthew McKinley, M.D., informed Mr. Espinoza that Mr. Espinoza had possible nerve or tendon damage to his left hand. (Pl. Dep. 66). X-rays, which were taken on June 17, 2007, showed a small metallic foreign body within the proximal phalanx of second digit of the left hand, but no evidence of fracture or dislocation. (Doc. 35-1, Def. Ex. D).

At his deposition, held on March 12, 2010, Mr. Espinoza showed counsel a bump on the top of his left hand that Mr. Espinoza attributed to the handcuffing incident. (Pl. Dep. 65-66). Mr. Espinoza testified in his deposition that he experiences numbness and pain in his left hand when doing physical work. (Pl. Dep. 82-83).

**IV.    Discussion.**

**A.    Defendants are entitled to summary judgment on the municipal liability claims.**

In order to establish municipal liability, Mr. Espinoza must show: (1) the existence of a municipal policy or custom and (2) a direct causal link between the policy or custom and the injury alleged, and that the municipal custom or policy was the "moving force" behind the violation. *See Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 399 (1997); *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006) (*citing City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). It bears underscoring that the record contains no evidence of direct causal link between any policy or custom and the alleged injury. Moreover, there is no evidence that any municipal policy or custom was the

5

"moving force" behind the violation. In that there is no evidence that would support a finding of municipal liability, Defendants are entitled to summary judgment on Mr. Espinoza's municipal liability claims.

**B.     Defendants are entitled to summary judgment on the supervisory liability claims.**

"Supervisory status alone does not create § 1983 liability." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). Mr. Candelaria and Mr. Herrera may not be held liable under § 1983 merely because of their supervisory positions. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). Rather, there must be "an affirmative link . . . between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Id.* (*quoting Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir.1997)).

While Mr. Espinoza testified in his deposition that Mr. Herrera was present at the scene, mere presence is insufficient to give rise to supervisory liability under § 1983. *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008). While Mr. Espinoza testified at his deposition that Mr. Herrera was present at the scene, the record contains no evidence that Mr. Herrera was personally involved in any constitutional violation. There is no evidence that Mr. Candelaria was present at the scene. Notably, no evidence affirmatively links any constitutional violation to these Defendants' supervision or any failure to supervise. The evidence, viewed in the aggregate and construed in the light most favorable to Mr. Espinoza, does not support a claim for supervisory liability. Defendants are entitled to summary judgment on the supervisory liability claims.

**C.     Mr. Herrera is entitled to qualified immunity.**

Mr. Herrera maintains that he is entitled to qualified immunity in his individual capacity. Qualified immunity "shields government officials performing discretionary functions from liability if their conduct does not violate clearly established rights of which a reasonable government official

would have known." *Graves*, 450 F.3d at 1218 (quotation omitted). Once a qualified immunity defense has been asserted, it the plaintiff's obligation to shoulder "the burden of showing both that a constitutional violation occurred and that the constitutional right was clearly established at the time of the alleged violation." *Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir. 2008). As previously discussed, there is no evidence that Mr. Herrera committed a constitutional violation. In that Mr. Espinoza has failed to meet his burden to overcome the assertion of qualified immunity, Mr. Herrera is entitled to qualified immunity.

**V.      Conclusion.**

Defendants are entitled to summary judgment on all remaining claims.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion for Summary Judgment on Qualified Immunity, (Doc. 81), filed on September 8, 2010, is **GRANTED.**

**IT IS FURTHER ORDERED** that judgment shall issue forthwith.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**